The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Michael H. CLIFTON, a/k/a Michael Jermaine Clifton, Defendant–Appellant.

No. 00CA0977.

Colorado Court of Appeals, Div. III.

Dec. 20, 2001.

Certiorari Granted April 21, 2003.

Ken Salazar, Attorney General, Barbara S. Askenazi, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

The Law Firm of Douglas S. Joffe, Douglas S. Joffe, Theodore B. Peak, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Michael H. Clifton, a/k/a Michael Jermaine Clifton, appeals the judgment entered on jury verdicts finding him guilty of three counts of kidnapping, two counts of burglary, and three counts of aggravated robbery. He also appeals his sentences. We vacate the judgment and sentence as to one count of aggravated robbery, remand for correction of the mittimus, and otherwise affirm.

On September 13, 1998, two different video rental stores in Aurora were robbed at gunpoint several hours apart. During the second incident, defendant and his accomplice forced two employees of a video store into a back office and held them at gunpoint. Defendant and his companion forced one employee to remain on the floor, while the other employee was ordered to open a safe and turn over the store's money to the robbers.

The People charged defendant with, and he was convicted of, two separate counts of aggravated robbery arising from the second incident. The information named each of the employees as the victim of a separate offense. The trial court rejected defendant's contention that only one robbery had been committed, and instead accepted the People's position that two separate offenses had been committed because the store's money was taken from the presence of the two employees.

## I.

Defendant first contends his constitutional rights under the Fifth and Fourteenth Amendments were violated because he was charged with and convicted of two counts of aggravated robbery arising from the second incident. Defendant maintains that the two charges arose from the same episode and that only one aggravated robbery could have occurred because there was only one taking. We agree.

■ A multiplicitous information charges a single offense in several counts. It violates the Fifth and Fourteenth Amendments' prohibition against double jeopardy because it creates the possibility that a defendant will receive more than one sentence for that single offense. *See People v. Borghesi,* 40 P.3d 15, (Colo.App. 2001).

In *People v. Borghesi, supra,* a panel of this court addressed the same issue on facts very similar to those presented here. The majority of the panel concluded two charges of aggravated robbery were multiplicitous and ordered that one count be vacated.

We view *Borghesi* as dispositive and similarly remand this case to the trial court with directions to vacate one of the aggravated robbery convictions entered for the second incident.

## II.

Defendant next contends the trial court abused its discretion in denying his motions for mistrial and for a new trial based on prosecutorial misconduct. According to defendant, reversal is required because the People unfairly introduced evidence suggesting defendant had committed other bad acts. We disagree.

Before trial, the court granted defendant's motion to suppress a photograph showing defendant and another man wearing large amounts of gold jewelry and kneeling next to a couch containing money and two crossed rifles. The trial court stated: "I agree that the picture with the money and jewelry is inappropriate. But the fact that the two defendants are present with rifles in the background [may be] probative. We'll see."

At trial, there was evidence showing a rifle was used in the two aggravated robberies and that the two rifles shown in the photograph were seized from defendant's apartment. Both rifles were admitted into evidence.

Defendant testified and stated that the rifles were "just laying around" the apartment. During his cross-examination, and also during the testimony of a rebuttal witness, the photograph was described and references were made to defendant and the rifles. However, the prosecutor did not refer to the money or the jewelry shown in the photograph and did not offer the photograph into evidence, explaining: "I will not offer [the photograph] in light of the prior rulings."

■ We conclude defendant opened the door to this evidence during his direct testimony when he attempted to distance himself from the rifles. Therefore, we perceive no misconduct by the prosecution in attempting to rebut defendant's testimony. *See People v. Braley,* 879 P.2d 410 (Colo.App.1993)(after defendant opens the door to an arguably inadmissible subject, further testimony and clarification are not improper).

Because we conclude there was no prosecutorial misconduct, it follows that the trial court did not abuse its discretion in denying defendant's motions for mistrial and for a new trial.

## III.

■ Relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), defendant next contends his constitutional rights were violated by the trial court's imposition of consecutive sentences pursuant to § 16–11–309(1)(a), C.R.S.2001, because the trial court, rather than the jury, determined that the crimes of violence arose out of the same incident, and that factual determination mandated the consecutive sentences. We conclude the mandatory consecutive sentencing provision contained in § 16–11–309(1)(a) does not alter the penalty prescribed for each

individual offense, and therefore does not violate *Apprendi.*

■ A defendant has no constitutional right to concurrent rather than consecutive sentences, *United States v. White,* 240 F.3d 127 (2d Cir.2001), and when a defendant is convicted of multiple offenses, the sentencing court generally has discretion to impose sentences concurrently or consecutively. *Qureshi v. District Court,* 727 P.2d 45 (Colo.1986). *But see* § 18–1–408(3), C.R.S.2001 (requiring concurrent sentences if more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried, as required by § 18–1–408(2), and those verdicts are based on the same acts and the evidence supporting them is identical).

However, § 16–11–309(1)(a) limits the trial court's discretion in sentencing by requiring consecutive sentences under certain circumstances. As relevant here, it provides: "A person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that sentences are served consecutively rather than concurrently."

In this case, each of the eight counts filed against defendant was charged as a crime of violence pursuant to § 16–11–309(2)(a)(I)(A), C.R.S.2001, and alleged that defendant used, or possessed and threatened the use of, a deadly weapon during the commission of each crime. The jury found the crime of aggravated robbery in each count was committed by the use of a deadly weapon, but it was not asked to determine whether both events were part of an ongoing transaction.

That determination was made at the sentencing hearing when the trial court found, based on the trial evidence, that both events were part of an ongoing transaction. After making that finding, the court concluded it was required to sentence defendant consecutively, and it sentenced him to the minimum crime-of-violence sentence on each count, to be served consecutively. Hence, each sentence was within the range of penalties provided by statute for that offense.

In *Apprendi v. New Jersey, supra,* 530 U.S. at 468, 120 S.Ct. at 2351, 147 L.Ed.2d at 442, the United States Supreme Court struck down a New Jersey "hate crime" law that provided for an "extended term" of imprisonment if the trial court found by a preponderance of the evidence that "the defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity."

After reviewing the historical significance of trial by jury and the requirement of proof beyond a reasonable doubt, the Supreme Court articulated this constitutional principle: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey, supra,* 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455.

A few years before *Apprendi,* the Supreme Court, in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), upheld a Pennsylvania statute that required a mandatory minimum sentence of five years for certain specified crimes if the sentencing judge found by a preponderance of the evidence that the defendant "visibly possessed a firearm" during the commission of the offense. The five-year minimum did not exceed the maximum sentence authorized for the specified crimes.

The Court concluded the Pennsylvania statute did not violate due process requirements because the statute

> neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm.

*McMillan v. Pennsylvania, supra,* 477 U.S. at 87–88, 106 S.Ct. at 2417, 91 L.Ed.2d at 77.

The majority in *Apprendi* clarified that it was not overruling *McMillan v. Pennsylvania, supra,* but was limiting *McMillan* "to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict." *Apprendi v. New Jersey,*

*supra*, 530 U.S. at 487 n. 13, 120 S.Ct. at 2361, 147 L.Ed.2d at 453.

Thus, *Apprendi* does not prohibit all factfinding by the trial court. It only proscribes factfinding by the trial court that increases the penalty for a crime beyond the prescribed statutory maximum. As was explained in *United States v. White, supra*, 240 F.3d at 136, where factual determinations are "used to sentence the defendant to a sentence within the maximum allowed by statute, *Apprendi* is not controlling, and such determinations can be made by the court without violating the defendant's right to due process." *See also People v. Cleveland*, 87 Cal.App.4th 263, 271, 104 Cal.Rptr.2d 641, 646 (2001)("*Apprendi* is relevant only where a judge-made factual determination increases the maximum statutory penalty for the particular crime or crimes.").

Other than in the context of merger issues, no Colorado appellate decision has addressed whether factfinding by the trial court that results in consecutive sentences for the defendant violates the holding in *Apprendi*. *See People v. Martinez*, 32 P.3d 520 (Colo.App.2001)(rejecting the defendant's argument that sentence enhancers became elements of the underlying offense for purpose of merger, and therefore that imposition of consecutive sentences relating to the same victim violated *Apprendi*).

However, the consecutive sentences issue raised here has been addressed in other jurisdictions. In *People v. Carney*, 196 Ill.2d 518, 256 Ill.Dec. 895, 752 N.E.2d 1137 (2001), the court concluded *Apprendi* was not violated by a state statute that mandated consecutive sentences if the sentencing court found the defendant had inflicted severe bodily injury. *See* 730 Ill. Comp. Stat. 5/5–8–4(a) (2001). The Illinois Supreme Court reasoned that a consecutive sentence only specifies the manner in which individual sentences will be served, and that consecutive sentences do not constitute a single sentence but are discrete sentences for each individual offense.

The court in *Carney* concluded that the maximum penalties for each offense are those prescribed in the statute defining the offense or in the associated sentencing statute, and that consecutive sentences, taken together, do not constitute the maximum penalty to which *Apprendi* refers. The court stated: "Nowhere in *Apprendi* did the Supreme Court state or imply that the determination of a fact that does not result in a defendant's being sentenced in excess of the statutory maximum must be decided by a jury." *People v. Carney, supra*, 196 Ill.2d at 529, 256 Ill.Dec. 895, 752 N.E.2d at 1143.

The court summarized its conclusion as follows: "[W]e hold that consecutive sentences imposed under [the applicable Illinois statute] do not violate the due process rights of defendants and that the Supreme Court's *Apprendi* decision does not apply to such sentences." *People v. Carney, supra*, 196 Ill.2d at 536, 256 Ill.Dec. 895, 752 N.E.2d at 1147.

*Apprendi's* application to a mandatory consecutive sentencing provision has also been addressed in the context of the federal sentencing guidelines. Those guidelines provide that if the guideline sentence is greater than the highest statutory maximum for any of the offenses of which a defendant was convicted, consecutive sentences must be imposed to the extent necessary to reach the guideline sentence. U.S. Sentencing Guidelines Manual § 5G1.2(d) (2001).

In *United States v. White, supra*, the defendant contended the trial court violated his constitutional rights by using the sentencing guidelines to impose consecutive sentences based on facts determined by the sentencing court. There, as here, the defendant maintained that such facts had to be determined by a jury. The court rejected the defendant's contention, stating:

[I]n *Apprendi* itself, the Supreme Court stated that the issue of consecutive sentences in the context of the case at hand was irrelevant to the Court's determination whether the sentencing court had impermissibly exceeded the statutory maximum for the particular count in question. That is, the Supreme Court's concern in *Apprendi* was whether the sentencing court had, on the basis of facts found by the court and not the jury, exceeded the sentence for a particular count. Here, the district court did not exceed the maximum

for any individual count. It cannot therefore be said that, as to any individual count, the court's findings resulted in the imposition of a greater punishment than was authorized by the jury's verdict.

*United States v. White, supra,* 240 F.3d at 135 (citation omitted).

In Colorado, consecutive sentences are not considered to be a single sentence. Each sentence is to be served separately. *In re Packer,* 18 Colo. 525, 33 P. 578 (1893). *See People v. Broga,* 750 P.2d 59, 64 (Colo.1988)(consecutive sentence "by its very nature is separate and distinct from any previously imposed sentence"); *see also People v. Cabral,* 878 P.2d 1 (Colo.App.1993)(consecutive sentences are viewed separately for proportionality review).

When defendant's sentence on each count is viewed separately, each sentence he received was less than the statutory maximum prescribed for the offense. Thus, while we fully acknowledge the practical impact of the consecutive sentences upon defendant, we nevertheless conclude the imposition of consecutive sentences did not increase his sentence for each offense. *See People v. Carney, supra.*

In summary, we conclude the imposition of consecutive sentences under § 16–11–309(1)(a) did not have the effect of increasing the penalty for the underlying crimes beyond the maximum provided for each offense, and therefore the statute does not violate the Supreme Court's holding in *Apprendi.* Accordingly, we reject defendant's contention that his constitutional rights were violated by the trial court's factfinding and its imposition of consecutive sentences pursuant to § 16–11–309(1)(a).

### IV.

Defendant next contends he was prejudiced by the manner in which the prosecution engaged in plea bargaining. He asserts that the district attorney improperly delegated the authority to make plea bargain offers to a committee composed of nonattorneys. Although defendant's case was tried before a jury and he did not enter a plea, defendant nonetheless claims he was prejudiced by the district attorney's alleged conduct.

Defendant acknowledges that he did not raise this issue until sentencing, and that "[i]t may well be that the sentencing hearing was not the best forum to raise [this issue]." Defendant further asserts that, "to the extent that defense counsel failed to object . . . in a timely fashion, or failed to lay a sufficient record . . . then defense counsel was clearly ineffective, and his ineffectiveness prejudiced his client." Defendant asks us to remand the case to the trial court for a complete hearing on this issue.

In our view, defendant's contention is best addressed in postconviction proceedings "where an evidentiary hearing is available if necessary to ascertain facts not present in the original trial record." *People v. Blehm,* 983 P.2d 779, 792 (Colo.1999). We express no opinion regarding the merits of defendant's claim.

### V.

We agree with the People that the mittimus should be corrected to reflect that defendant's sentences are to be served consecutively.

The judgment and sentence as to one count of aggravated robbery are vacated and the case is remanded to the trial court for correction of the mittimus to so reflect and to reflect defendant's consecutive sentences. In all other respects, the judgment and sentences are affirmed.

Judge JONES concurs.

Judge NIETO concurs in part and dissents in part.

Judge NIETO concurring in part and dissenting in part.

For all the reasons stated in my dissenting opinion in *People v. Borghesi,* 40 P.3d 15, (Colo.App. 2001), I respectfully dissent from part I of the majority opinion.

In all other respects I concur with the opinion of the majority. Accordingly, I

would affirm the judgment of conviction on all charges.